IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MEZZE USA LLC, et al.,                )
                                      )
            Plaintiffs,               )
                                      )
        v.                            )        1:23-cv-958 (LMB/JFA)
                                      )
UNITED STATES CITIZENSHIP AND         )
    IMMIGRATION SERVICES,             )
                                      )
            Defendant.                )

## MEMORANDUM OPINION

Before the Court are the parties cross-motions for summary judgment, [Dkt. Nos. 39, 42],

which have been fully briefed and argued. For the reasons stated in open court and explained in

more detail below, plaintiffs Mezze USA, LLC, Rania Chebat, Cafic Hanna Chebat, Christophe

Chebat, Chafic Anthony Chebat, and Sophia Karen Chebat's ("plaintiffs") Motion for Summary

Judgment has been denied and defendant United States Citizenship and Immigration Services'

("defendant" or "USCIS") Motion for Summary Judgment has been granted.

## I. BACKGROUND

According to the undisputed statement of facts and the administrative record, Mezze

USA is a start-up company organized on December 8, 2016 with its principal place of business

in Arlington County, Virginia. Administrative Record ("AR") at 34; [Dkt. No. 40] at 7. It is a

subsidiary of Lebanese Mezze Establishment, a manufacturer of Lebanese frozen and ready to

eat food products that is located near Beirut, Lebanon. AR at 72. Mezze USA was created with

the intention of bringing Middle Eastern cuisine to the United States and "seeks to sell foods on a

wholesale and direct to consumer (DTC) basis." Id. at 77. Rania Chebat, a citizen of Lebanon,

began working for Lebanese Mezze Establishment in 2011 as a Food Safety Team Leader in

Lebanon.  In 2015, she was given the additional responsibility of Operations Director.  Id. at 81.

On May 21, 2020, Mezze USA filed an L-1A "new office" visa petition on Rania

Chebat's behalf.  Id. at 71.  In that petition, Mezze USA described Rania Chebat as the Chief

Executive Officer of Mezze USA.  Id.  On June 17, 2020, Rania Chebat's initial L-1A "new

office" visa petition was approved for a period of one year, until June 16, 2021.[1]  Id.  Despite

Rania Chebat's "best efforts" to seek extension of her L-1A status, her visa expired on June 16,

2021.  Id.

Mezze USA refiled an L-1A intracompany transferee visa petition for Rania Chebat in

January 2022, which defendant approved on February 1, 2022 "for the purpose of opening a new

office" for Mezze USA.  Id. at 5, 132.  The visa lasted until February 1, 2023.  Id.  At the same

time, Rania Chebat's husband, plaintiff Chafic Hanna Chebat, and her children, plaintiffs

Christophe Chebat, Chafic Anthony Chebat, and Sophia Karen Chebat, all of whom are citizens

and residents of Lebanon, were admitted into the United States.  Since Rania Chebat's entry into

the United States on April 8, 2022, "more than $0.2M has been spent on machinery and start-up

costs with another $0.4M to be spent between the end of 2022 and May/June 2023 on

construction of" a new commercial kitchen.  Id. at 70.

On January 26, 2023, five days before Rania Chebat's visa was set to expire, Mezze USA

filed a petition requesting an extension of her L-1A visa as an intracompany transferee manager.

Id. at 5.  The other plaintiffs also timely filed applications to extend their L-2 nonimmigrant

status at around this time.  In its petition to USCIS, Mezze USA indicated that Rania Chebat

---

[1] Although plaintiffs' brief states that Rania Chebat's petition was approved for two years, this was due to an administrative error, and her visa was amended to reflect legal status for one year. See AR at 71.

would continue to perform the duties described in its previous petition, including training employees, setting up the factory to meet the applicable standards, engaging prospective customers to develop business relationships, overseeing the production and operations of the U.S. company, and adjusting U.S. Company proprietary recipes for products to match U.S. consumer tastes. Id. at 91. Mezze USA described Rania Chebat's accomplishments for the company since arriving in the United States and identified the employees whom it had employed and intended to employ. Id. at 91-110.

On February 1, 2023, USCIS issued a request for evidence. Id. at 31-36. The request specifically sought additional evidence to establish that Rania Chebat had been and would be primarily employed in a managerial or executive position in the United States to comport with relevant statutes. USCIS informed Mezze USA that the information it had provided to defendant was insufficient to establish that Rania Chebat worked in a managerial capacity, and it provided a list of the types of suggested evidence Mezze USA could provide to meet its burden. Id. Mezze USA responded to this request on April 22, 2023. Id. at 10. In its response Mezze USA provided only a letter from Elias Rania, a member of its Board of Directors and majority shareholder for Mezze USA, wage and tax statements for Rania Chebat and other employees, photographs of a shared kitchen space used by Mezze USA, and a timeline of Rania Chebat's achievements in the preceding year.

On May 8, 2023, USCIS issued its decision ("Decision") denying Mezze USA's petition, and accordingly, Rania Chebat's application for extension of stay, id. at 5-17, explaining that Mezze USA had not met its burden to demonstrate that Rania Chebat had been, and would be, employed in a managerial capacity because, among other things:

> a) "the evidence of records does not establish the beneficiary will likely have a subordinate level of managerial, supervisory or professional

3

employees to direct and allow her to focus on the management of the organization rather than the daily operational tasks[]"

b) "the evidence furnished does not establish that the beneficiary's actual duties performed [are] primarily managerial in nature. [I]nstead, based on the totality of evidence, it appears that beneficiary is primarily performing routine tasks associated with the operations of your company and will not be relieved from performing non-qualifying job duties"

c) "The record does not contain corroborating evidence to support a finding that your new office extension will be able to support a manager or executive position in the United States" and

4) "You did not establish that the 'function' of the Chief Executive Officer is essential to your organization."

[Dkt. No. 1] at 8-9; AR at 15-16.  On or around the same day, defendant denied the other plaintiffs' applications to extend their L-2 statuses, on account of Rania Chebat's petition having been denied.

Plaintiffs filed this civil action on July 20, 2023, challenging defendant's actions.  See [Dkt. No. 1].  Plaintiffs bring three counts in their Complaint, all under the Administrative Procedure Act ("APA").  Count I alleges that the Decision denying Mezze USA's petition for extension of Rania Chebat's L-1A status is not in accordance with law because it violates the surplusage cannon.  Id. at ¶ 44-51.  Count II alleges that the Decision is arbitrary and capricious "because it is conclusory."  Id. at ¶ 52-57.  Count III seeks the Court to compel agency action unlawfully withheld or unreasonably delayed.[2]  Id. at ¶ 59.

On October 13, 2023, the Court heard argument on plaintiffs' Motion for Preliminary Injunction, in which they requested that the Court postpone the effectiveness of defendant's

---

[2] The parties agreed that, given the administrative record of proceedings before USCIS which governs this record-review case, this action can be resolved most efficiently through cross-dispositive motions.  [Dkt. No. 19] at 1.  Defendant filed the entire administrative record on September 26, 2023.  See [Dkt. Nos. 20-34].

Decision.  See [Dkt. No. 7].  The Court denied plaintiffs' request for a preliminary injunction in part because it found that plaintiffs were not likely to prevail on any of the three counts alleged in their Complaint, including their claims that defendant's denial of plaintiffs' visas were not in accordance with the law, were arbitrary and capricious, and were unlawfully withheld or unreasonably delayed.

## II. RELEVANT STATUTES

An L-1 "intracompany transferee" is a nonimmigrant work classification, under which foreign employers may transfer certain types of employees to the United States to be employed in either L-1A status (as executive managers) or L-1B status (in specialized knowledge capacities).  The purpose of the L-1 nonimmigrant visa category is to "transfer qualified employees from a qualifying entity abroad to work for their related entity in the US to improve management effectiveness" among other things.  Jason E. Burritt, The L-1 Intracompany Transferee Nonimmigrant Visa Classification, Practical Law Labor & Employment (maintained); see 8 U.S.C. § 1101(a)(15)(L).  That same statute also allows for extension of L-2 status to the spouse and minor children of any noncitizens accompanying the L-1 status holder.  Id.

To qualify as an intracompany transferee, a foreign worker must: 1) within 3 years preceding the time of his application for L-1 status, have been employed continuously for one year by firm, corporation, or other legal entity, and 2) seek to enter the United States temporarily in order to continue to render his services to the same employer or subsidiary thereof in a capacity that is managerial, executive or involves specialized knowledge.  8 U.S.C. § 1101(a)(15)(L).

Employers must file a petition with USCIS to sponsor a worker for L-1 status.  Once a petition from a qualifying legal entity is filed, USCIS undertakes an investigation to determine

5

whether the foreign worker qualifies for L-1 status.  If an entity files a petition seeking L-1A

status for a foreign worker acting in a managerial capacity, USCIS assesses whether the

employee[3]

> (i) manages the organization, or a department, subdivision, function, or component of the organization;

> (ii) supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

> (iii) if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

> (iv) exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

8 U.S.C. § 1101(a)(44)(A).

If a petitioner establishes that the offered position meets all four of the statutory elements,

the petitioner must then prove that the beneficiary will primarily engage in managerial duties, as

opposed to ordinary operational activities alongside the petitioner's other employees.  [Dkt. No.

1-2] at 7 (citing Family Inc. v. USCIS, 469 F.3d 1313, 1316 (9th Cir. 2006)); see also Ren v.

USCIS, 60 F.4th 89, 94 (4th Cir. 2023) (explaining that "the term 'managerial capacity' means

an assignment within an organization in which the employee primarily" engages in all four

criteria spelled out in the statute).  Moreover, USCIS is required to "take into account the

reasonable needs of the organization" based upon "the overall purpose and stage of development

---

[3] Although "executive" and "specialized knowledge" are also defined by statute, because Mezze USA sought extension of Rania Chebat's L-1 status as a "manager," this statutory background only focuses on the statutory definition for an employee seeking L-1 status in a "managerial capacity" (also referred to as L-1A status).

of the organization" in determining whether a worker satisfies the "managerial capacity"

requirements for an L-1A status determination and subsequent visa.  AR at 7.

If a petition indicates that "the beneficiary is coming to the United States as a manager

. . . to open or to be employed in a new office in the United States," USCIS requires a petitioner

to submit evidence that demonstrates:

> (A) Sufficient physical premises to house the new office have been secured;
>
> (B) The beneficiary has been employed for one continuous year in the three year period preceding the filing of the petition in an executive or managerial capacity and that the proposed employment involved executive or managerial authority over the new operation; and
>
> (C) The intended United States operation, within one year of the approval of the petition, will support an executive or managerial position as defined in paragraphs (l)(1)(ii) (B) or (C) of this section, supported by information regarding:
>
>> (1) The proposed nature of the office describing the scope of the entity, its organizational structure, and its financial goals;
>>
>> (2) The size of the United States investment and the financial ability of the foreign entity to remunerate the beneficiary and to commence doing business in the United States; and
>>
>> (3) The organizational structure of the foreign entity.

8 C.F.R. § 214.2(l)(3)(v).  Once approved, L-1A status for a beneficiary who is to be employed

in a "new office"—meaning "an organization which has been doing business in the United States

through a parent, branch, affiliate, or subsidiary for less than one year"—is valid for a specified

period.  8 C.F.R. § 214.2(l)(1)(F).  An employer may seek to extend such "new office" L-1A

status by filing a new petition with USCIS and providing:

> (A) Evidence that the United States and foreign entities are still qualifying organizations as defined in paragraph (1)(1)(ii)(G) of this section;

(B) Evidence the United States entity has been doing business as defined in paragraph (l)(1)(ii)(H) of this section for the previous year;[4]

(C) A statement of the duties performed by the beneficiary for the previous year and the duties the beneficiary will perform under the extended petition;

(D) A statement describing the staffing of the new operation, including the number of employees and types of positions held accompanied by evidence of wages paid to employees when the beneficiary will be employed in a managerial or executive capacity; and

(E) Evidence of the financial status of the United States operation.

8 C.F.R. § 214.2(l)(14)(ii).

### III. DISCUSSION

**A.  Standard of Review**

"[I]n an APA agency review case, summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA.'" Hints, Inc. v. Hirshfeld, 2022 WL 874317, at *4 (E.D. Va. Mar. 23, 2022) (quoting Hyatt v. U.S. Patent & Trademark Off., 146 F. Supp. 3d 771, 780 (E.D. Va. 2015)).  The APA "confines judicial review of executive branch decisions to the administrative record of proceedings before the pertinent agency[.]"  Harrison v. Kendall, 2023 WL 3016277, at *13 (E.D. Va. Apr. 20, 2023) (quoting Shipbuilders Council of Am. v. U.S. Dep't of Homeland Sec., 770 F. Supp. 2d 793, 802 (E.D. Va. 2011)).

Under the APA, a court may set aside an agency's final action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 704. Although judicial review under this standard is "highly deferential," a court must nonetheless

---

[4] "Doing business means the regular, systematic, and continuous provisions of goods and/or services by a qualifying organization and does not include the mere presence of an agent or office of the qualifying organization in the United States and abroad."  8 C.F.R. § 214.2(l)(1)(ii)(H).

"engage in a searching and careful inquiry of the [administrative] record, so that [it] may consider whether the agency considered the relevant factors and whether a clear error of judgment was made." Casa de Md. V. U.S. Dep't of Homeland Sec., 924 F.3d 684, 703 (4th Cir. 2019) (citation and internal quotation marks omitted).

## B. Analysis

### 1. Not in Accordance with the Law (Count I)

Count I of the Complaint alleges the Decision is "not in accordance with the law" because it runs contrary to the surplusage canon, which provides that "[i]f possible, every word and every provision is to be given effect. None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." [Dkt. No. 9] at 13 (citing Crespo v. Holder, 631 F.3d 130, 135 (4th Cir. 2011) ("Statutes must be interpreted . . . to give each word some operative effect.")). The Complaint alleges that defendant's conclusion that "the evidence of record does not establish the beneficiary will likely have a subordinate level of managerial, supervisory or professional employees to direct and allow her to focus on the management of the organization rather than daily operational tasks" is contrary to the surplusage canon because it renders the portion of the statute's definition of "managerial capacity" inoperative. [Dkt. No. 1] at 11. Plaintiffs argue that by ignoring the statute's language that expressly permits an employee to act in a managerial capacity without acting in a supervisory role, defendant's decision disallows any employee who does not supervise individuals from obtaining an L-1A visa status.

The Complaint's first Count is meritless. Without even addressing whether a decision that runs afoul of the surplusage canon is in and of itself "unlawful," plaintiffs cannot succeed on this claim because even a cursory review of the record establishes that defendant concluded that Rania Chebat did not satisfy the definition for "managerial capacity" because she did not meet

9

either the required supervisory or managerial qualifications.  AR at 15-16.  Defendant first found

that, because Rania Chebat did not "supervise or control the work of other supervisory,

professional, or managerial employees," Mezze USA did not satisfy the supervisory prong of 8

U.S.C. § 1101(a)(44)(A)(ii).  Defendant also considered whether Rania Chebat managed an

essential function of Mezze USA as alternatively required by 8 U.S.C. § 1101(a)(44)(A)(ii).  Id.

at 16 ("The beneficiary cannot be deemed a 'function manager'" because Mezze USA "did not

establish that the 'function' of the Chief Executive Officer is essential to your organization").

This shows that defendant individually considered both prongs of 8 U.S.C. § 1101(a)(44)(A)(ii).

That plaintiffs disagree with defendant's ultimate finding does not render a decision "unlawful."

### 2. Arbitrary and Capricious (Count II)

Count II of the Complaint alleges that defendant unlawfully denied Mezze USA's

petition because the Decision was conclusory and therefore, arbitrary and capricious.  [Dkt. No.

1] at 12.  More specifically, the Complaint alleges that three of the four "decisions" for denying

Mezze USA's petition do not state the underlying facts on which they are based.  Id.

The APA instructs courts to set aside agency action that is "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  In the Fourth

Circuit, a court "normally will not set aside agency action as arbitrary and capricious unless the

agency relies on inappropriate factors, ignores a critical issue, or reaches a decision that is flatly

contradicted by the evidence or is otherwise implausible."  Ren v. U.S. Citizenship & Immigr.

Servs., 60 F.4th 89, 93 (4th Cir. 2023).  The Court has previously held that "the ultimate standard

of review for an APA case is 'narrow,' and the court is 'not empowered to substitute its

judgment for that of the agency.'"  Mishra v. Richardson, 2021 WL 1566071, at *2 (E.D. Va.

Apr. 20, 2021).

10

Here, plaintiffs quibble with defendant's ultimate conclusions, while ignoring the 13 pages of text that describe the factors and evidence considered by defendant, including evidence presented by Mezze USA, in coming to the "decisions" cited in the Complaint.  More specifically, defendant begins the Decision by explaining that it approved Rania Chebat's previous 2022 new office L-1A status "based on [Mezze USA's] initial claims" that included "securing a sufficient physical premises to house the company's food manufacturing business during its first year." AR at 12.  It then emphasized that "the record shows that, at the end of the first year, the company has (1) not secured a food production facility, and (2) that the company had no staffing other than the beneficiary, and a small amount of paid intermittent services."[5] Id. Although Mezze USA had sought space to create a kitchen in the United States, it conceded that its production facility would not be completed until May 2023; however, in order for defendant to extend a new office L-1A status, Mezze USA was required to provide, among other things, evidence that it had "been doing business for the previous year," which meant that Mezze USA was engaging in "regular, systematic, and continuous provisions of goods and/or services." 8 C.F.R. § 214.2(l)(1)(ii)(H).  Based on the lack of a physical facility to produce product, an inactive website and de minimis staff, defendant's conclusion that Mezze USA had not "been doing business for the previous year" was undisputable.  Plaintiffs do not even address this finding in the Complaint or in their briefing, and this finding alone supports denial of Mezze USA's petition.  See 8 C.F.R. § 214.2(l)(14)(ii) (requiring petitioner to show that it had been doing business in the United States during the previous year).

---

[5] Despite its initial promise to hire nine workers during the first year, Mezze USA submitted evidence that only two of the nine employees had been hired.  AR at 108.

Defendant nevertheless provided additional reasons explaining why it denied Mezze USA's petition, including that Rania Chebat was not supervising or managing professional employees.  It outlined Rania Chebat's duties, including choosing the right location to set up a factory, hiring employees, training employees, setting up the factory to meet the applicable standards, engaging prospective customers, overseeing the production and operations of the company, and adjusting proprietary recipes for products to match U.S. consumer taste tests.  AR at 7-9.  These duties also included "oversee[ing] day-to-day operations," and "develop[ing] and test[ing] different recipes."  Id.  Defendant further detailed Rania Chebat's submitted "accomplishments," which included, among other things, searching for kitchen space and the eventual signing of a temporary, 6-month lease for kitchen space while Mezze USA's anticipated location became "operational."  Id. at 8-9.  Based on these submissions, defendant concluded that Mezze USA did not meet its burden to show that Rania Chebat primarily "perform[ed] high-level responsibilities" specified in 8 U.S.C. § 1101(a)(44)(A) and (B), and instead "perform[ed] routine tasks associated with the operations" of Mezze USA.  AR at 15.

Defendant went even further by looking at the company's "potential growth" in conjunction with "the proposed organization structure" to determine whether Rania Chebat could eventually "primarily" perform "high-level responsibilities" as opposed to focusing on "routine tasks associated with operations."  Id. at 16.  It emphasized that Mezze USA's assertion that it was "processing a bank loan application in the amount of $800,000" was insufficient to show that the USA office "will be able to support a manager or executive position in the United States."[6]  Id.

---

[6] Plaintiffs argue in their brief that "[i]nasmuch as USCIS did not rely on Mezze USA's lack of revenue as a basis for its decision, neither may this Court," invoking the Chenery doctrine. [Dkt. No. 40] at 15.  Although Chenery states that "an administrative order cannot be upheld unless the

Defendant also recognized that, because Mezze USA's structure was being used as a "factor in determining whether an individual is acting in a managerial capacity," it had to "take into account the reasonable needs of the organization, in light of the overall purpose and stage of development of the organization. AR at 12; See 8 U.S.C. § 1101(a)(44)(C). Defendant did just that by summarizing the organizational structure Mezze USA provided:

- **Joseph Khali, Board of Directors**
- **Elias Khalil, Board of Directors**
  - **Rania Khalil Chebat, Chief Executive Officer**
    - **Tipsuda Indasom, Administrative Assistant**
    - **Vacant, Production Manager**
    - **Vacant, Food Safety Team Leader**
    - **Siham Moussa El Geor, Production Associate currently working at temporary leased kitchen location.**

    - **Lisbeth Balderrama, Production Associate currently working at temporary leased kitchen location**
    - **Vacant, Production Associate**
    - **Vacant, Production Associate**

AR at 13-14. Defendant explained that it had insufficient information to determine whether the "employees supervised are professional" because Mezze USA only provided job descriptions for these positions, most of which were vacant, 8 U.S.C. § 1101(a)(44)(A). Moreover, even if all the positions in Mezze USA's relevant organizational structure had been filled, Mezze USA did not

---

grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained," SEC v. Chenery Corp., 318 U.S. 80, 95 (1943), USCIS was required by regulation to consider evidence of Mezze USA's financial status and indeed did so here. In addition to noting Mezze USA's gross annual income, which was only $3,400.75, USCIS cited that Mezze USA had a website but that "there is no internet viability of food production," AR at 12, 15, and Mezze USA had sought an $800,000.00 bank loan, id. at 16. Ultimately, USCIS found that this was not enough evidence to demonstrate that Mezze USA's office could support a manager in the United States. Id.

show how the subordinate positions under Rania Chebat would relieve her from day-to-day responsibilities associated with "food manufacturing operations." AR at 15. None of the provided job descriptions explained how Rania Chebat would go from doing tasks like negotiating leases and ordering equipment to supervising individuals who would be performing those tasks. Id. Mezze USA had an opportunity to amend its application materials when defendant asked for more information in February 2023. Despite this request, Mezze USA failed to meet its burden to clarify the evidence. Because it was "responsible for ambiguities in the record," it "should have provided independent objective evidence" to support its petition. Mairykeeva v. Barr, 378 F. Supp. 3d 391, 398 (E.D. Pa. 2019); Ren, 60 4th at 94 (finding that vague descriptions of employment in a petition "are insufficient").

Defendant considered that, even if Rania Chebat did not oversee supervisory or managerial subordinates, this point would be immaterial if she qualified as a "function manager" pursuant to 8 U.S.C. § 1101(a)(44)(A)(ii). It clarified that while the term "essential function" is not defined by statute, the burden was on plaintiffs to "submit sufficient documentation establishing that the function managed by the beneficiary is (1) a clearly defined activity; (2) essential, i.e., core to the organization." AR at 16 (citing 8 U.S.C. § 1101(A)(44)(a)(ii)). Accordingly, Mezze USA retained the burden of submitting evidence showing that Rania Chebat performed tasks "core to the organization" and that she would primarily "manage" rather than "perform" the function. Id. Defendant again found that Mezze USA failed to meet its burden to show that any employee (not merely a professional that would be supervised by Rania Chebat) would relieve Rania Chebat of performing the day-to-day operations of the company. Id. Defendant explained that "[a]bsent additional evidence that more fully describes the function to be managed by the beneficiary, in particular, that the beneficiary will be managing an essential

14

function and will function at a senior level within your organizational hierarchy, and evidence

that you have sufficient staff supporting the beneficiary's proposed position," it could not

conclude that Rania Chebat "will primarily manage an essential function." AR at 16.

Accordingly, the Court finds that defendant's decision was neither arbitrary, capricious,

or contrary to law because defendant provided a "rational connection between the facts found

and the choice made." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S.

29, 43 (1983). Defendant's decision satisfies the "highly deferential" review the Court should

undertake to determine whether defendant has engaged in "clear error of judgment." Ohio

Valley Env't Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009); Hughes River

Watershed Conservancy v. Johnson, 165 F.3d 283, 287 (4th Cir. 1999).[7]

### 3. Compel Agency Action Unlawfully Withheld or Unreasonably Delayed (Count III)

Count III of the Complaint alleges that USCIS "unlawfully denied" Mezze USA's

petition to classify Rania Chebat as an intracompany transferee and that in so doing "has

unlawfully withheld and/or unreasonably delayed a lawful decision on the merits of this

petition[.]" [Dkt. No. 1] at ¶ 59. Plaintiffs cannot succeed on either of their unlawfulness claims

---

[7] Plaintiffs cite to a variety of out-of-circuit district court and circuit court cases to support their position that USCIS' Decision was conclusory, and, therefore, arbitrary and capricious; however, none of those cases are persuasive. For example, in Precetaj v. Sessions, 907 F.3d 453, 458 (6th Cir. 2018), and Zhao v. U.S. Dep't of Just., 265 F.3d 83, 96-97 (2d Cir. 2001), the courts concluded that the Board of Immigration Appeals' two-sentence analysis was conclusory. In Am. Horse Protection Ass'n v. Lyng, 812 F.2d 1 (D.C. Cir. 1987), the court similarly found the agency's "two conclusory sentences" were "insufficient to assure a reviewing court that the agency's refusal to act was the product of reasoned decisionmaking," and in Sierra Club v. U.S. Env't Protection Agency, 972 F.3d 290, 298 (3d Cir. 2020), the agency did not "show its work" as to why it chose a certain pollution limit when a lower limit was available in the record. Here, by contrast, USCIS carefully explained its reasons in a 13-page Decision, and it did "show its work," by listing Rania Chebat's responsibilities during the first year of operations in the United States, AR at 8-11, by detailing, among other facts, Mezze USA's organizational structure, AR at 12-15, and by explaining that the evidence did not meet the statutory and regulatory criteria, AR at 15-17.

because they have not identified any statute or regulation that requires USCIS to approve

extending Rania Chebat's L-1A status.  Under 5 U.S.C. § 706(1) the Court is required to

"determine the applicability of the terms of an agency action" and "compel agency action

unlawfully withheld or unreasonably delayed."  As the Supreme Court has explained, a claim

under § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete

action that it is required to take."  Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 62-63

(2004) (emphasis in original).  "The limitation to required agency action rules out judicial

direction of even discrete agency action that is not demanded by law[.]"  Id.  The decision of

whether to approve an I-129 petition is discretionary.  See 8 U.S.C. § 1184(c)(1) ("The question

of importing any alien as a nonimmigrant under subparagraph . . . (L) . . . of section 1101(a)(15)

of this title . . . in any specific case or specific cases shall be determined by the Attorney General,

after consultation with appropriate agencies of the Government, upon petition of the importing

employer."); see Y&N Building Supply US LLC v. U.S. Citizenship & Immigr. Servs., 2019 WL

4748320, at *2 (S.D. Fla. Aug. 9, 2019) ("Accordingly, the Court holds that Defendant was not

arbitrary or capricious, nor did it abuse its discretion in denying Plaintiff's I-129 Petition.").

     In deciding not to extend Rania Chebat's visa, defendant considered regulations, which

required Mezze USA to demonstrate it had been "doing business" during the validity period of

the first application, 8 C.F.R. § 214.2(1)(14)(ii)(B), and determined that Mezze USA was not yet

regularly selling food in the United States; barely had a staff; had not established its permanent

food production location; and aside from some sporadic transactions, had no sales record.

Accordingly, defendant properly exercised its discretion in determining that Mezze USA had

failed to establish that Rania Chebat was eligible for a renewal of her L-1 status.  Because

defendant did undertake a detailed analysis of whether plaintiffs had met regulatory requirements, it neither unlawfully or unreasonably withheld or delayed agency action.

IV. CONCLUSION

For the aforementioned reasons, plaintiffs' Motion for Summary Judgment [Dkt. No. 39] has been denied, and defendant's Cross Motion for Summary Judgment [Dkt. No. 42] has been granted.  With the issuance of this Memorandum Opinion and the accompanying Order, judgment will be entered in defendant's favor.

Entered this ⎯ day of January, 2024.

Alexandria, Virginia

_____ /s/

Leonie M. Brinkema
United States District Judge